# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JODY LOPEZ,

       Plaintiff,

vs.                                                                                                                                      Civil No. 98-0961 JP/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 23, 1999 **[docket # 9]**. The Commissioner denied Plaintiff's request for Social Security Disability Insurance and Supplemental Security Income (SSI) benefits. Plaintiff, currently age 46, alleges a disability which commenced September 10, 1995, due to back problems, degenerative disc disease, and numbness and pain when trying to sleep. Ms. Lopez has a tenth grade education and worked previously as a cashier or retail sales clerk.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Plaintiff retains a residual functional capacity for sedentary work. The Appeals Council denied Ms. Lopez' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

    3. The standard of review in social security appeals is whether the Commissioner's final

decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that the residual functional capacity finding is not supported by substantial evidence and is contrary to law; (2) that the ALJ's finding that the number of jobs available to Ms. Lopez is not sufficient under the current law; and (3) that the ALJ's credibility determination is not supported by substantial evidence and is contrary to law.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. At the fifth step, the burden shifts to the Commissioner to produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th

Cir. 1988).

7. The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

8. Plaintiff last worked in September 1995. She has had three back surgeries as a result of a ruptured disc sustained during a fall at work in 1979, and she reinjured her back in 1995 while working as a sales clerk when she squatted down to pick up something from the floor. Ms. Lopez attempted to return to work after each surgery. At her last job which she started at again in 1990, because she missed three or four days a week, she was eventually laid off. Tr. at 34-35, 38.

9. Ms. Lopez described her lower back pain to the ALJ as a constant "sharp jabbing pain," which shoots down through her hips to her knee. Tr. at 42-43. She also complains of muscle spasms and carpal tunnel syndrome where the fingers of her left hand go numb. Tr. at 40. She stated that walking any distance "bothers" her, that she can sit for five to ten minutes before she has to stand, that she can stand for only four to five minutes and that she cannot bend. Tr. at 35, 44-55, 55. She also complains of headaches which she gets twice a day, but which are relieved by extra-strength Tylenol. Tr. at 50.

10. Plaintiff stated that her husband does all the housework and shopping and that he

helps her with her grooming and dressing. Tr. at 51-54. It takes her fifteen to twenty minutes to get out of bed in the morning, after which she spends the day in a high back chair watching television. Tr. at 51. She needs to lie down several times a day: her routine is to lie down ten to twenty minutes, then get up and moves around.

11. She told the ALJ that she used to take approximately fourteen tablets of Tylenol a day until one of the doctors she visited told her to stop, and she had also been prescribed muscle relaxants and Hydrocodone. Shortly before the hearing, Plaintiff's doctor started her on Ultram 50 mg. According to Plaintiff, none of the medications seem to help.

12. The ALJ found that other impairments which Plaintiff described at the hearing, i.e., carpal tunnel syndrome and diverticulosis, were not "severe" for step two purposes, based on lack of medical treatment for these conditions as well as the fact that they presented no significant limitations on her ability to work. Plaintiff does not dispute these findings.

**First Alleged Error**

13. Plaintiff claims that the ALJ's finding that Ms. Lopez retains a residual functional capacity for sedentary work is not supported by substantial evidence and is contrary to law. Contrary to Plaintiff's position, I find that the ALJ's conclusion was based on positive evidence from the record.

14. An x-ray done in February 1996 showed some postoperative changes at L5, arthritic changes at L5-S1 and degeneration of the disc at L5-S1. Tr. at 138. An MRI done about a year later concluded that the cause of the impairment was an extruded disc fragment from L4-5 level that migrated slightly, and post-surgical changes at L5-S1.

15. Plaintiff contends that the opinion of Dr. Reeve should not have been afforded the

4

weight given to it by the ALJ because Dr. Reeve was a consulting physician. Dr. Reeve examined Ms. Lopez in February 1995. Tr. at 138-42. He found that Plaintiff had full range of motion in both upper and lower extremities. His report stated that Plaintiff's back pain increased on bending and twisting, and was alleviated with a change in position. The report stated that Plaintiff reported being able to drive, take care of her grooming and other daily activities independently, and that she can lift up to 10 pounds without pain.

16. Dr. Reeve opined in an assessment of Plaintiff's residual capacity that Ms. Lopez can lift and carry 15 to 20 pounds, stand and walk for 8 hours total (3 hours without interruption) and sit for 8 hours total (8 hours without interruption). Plaintiff could never stoop, crouch, kneel or crawl, but occasionally climb and balance. Tr. at 143-44. Dr. Reeve concluded that although Plaintiff would be restricted and limited in some of her daily activities and in her ability to work, she was not "permanently or 100% disabled from performing any occupation" and that she would be able to perform light or sedentary work. Tr. at 141.

17. Plaintiff is correct that a non-examining physician's report should not be given as much weight as that of a treating physician. See Williams v. Bowen, 844 F.2d 748, 757 (10th Cir. 1988). However, there is no justification for minimal deference here where the opinion is not inconsistent with any of the other medical reports (with the exception of Plaintiff's own statement concerning ability to do daily activities, which I address later). In fact, the ALJ is well advised to obtain a consulting physician's opinion when the claimant's record does not contain the necessary information from claimant's own physicians. Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997) (ALJ should order consultative examination when record establishes reasonable possibility of disability and result of examination could be expected to assist in resolving disability

issue); see also 20 C.F.R. §§ 404.1512(f); 416.912(f).[1]

18. The ALJ did not incorrectly weigh Dr. Reeve's opinion in comparison with reports from treating physician, because there simply were not many of the latter. Plaintiff saw her own physician, Dr. Eileen Comstock only once, and that occurred only a month prior to the administrative hearing. At this examination, Dr. Comstock noted that Plaintiff reported to be in constant pain, which increased in the mornings or when she was on her feet for a long time. Tr. at 148. The doctor diagnosed the problem as probably osteoarthritis. Plaintiff saw Dr. Bashker in 1994 and 1995: three out of the four visits were for problems unrelated to back pain. Tr. at 133-34. Subsequent to the onset date, Plaintiff saw only consulting physicians for purposes of the disability evaluation.

19. Dr. Reeve's opinion is not internally inconsistent, as Plaintiff contends. The doctor's medical conclusion that Plaintiff is not 100% disabled is not inconsistent with the finding that Plaintiff is precluded from stooping. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply. SSR 96-9. However, for such cases, consultation with a vocational expert is recommended where a claimant is limited to "less than occasional" stooping -- this was done here. In light of the VE's opinion (see below), Dr. Reeve's conclusion that Plaintiff is not 100% disabled is compatible with the severe stooping restrictions.

---

[1] The cases cited by Plaintiff in support of her argument that Dr. Reeve's report should not be given much weight are easily distinguishable. In those cases, unlike here, the consulting physicians' reports either consisted of conclusory findings regarding the plaintiff's residual functional capacity, or contradicted the treating physician's opinion and report. Also, in one of the cases cited, Gatson v Bowen, the basis for the ALJ's credibility finding was not only inadequate but inconsistent with the treating physician's remarks. 838 F.2d 442, 447 (10th Cir. 1998).

20. The other medical evidence is consistent with the ALJ's findings, with Dr. Reeve's opinion, and with other consultative reports. For example, a DDS consultative note from early 1996 notes for "light RFC with recommendation to change positions." Tr. at 106. Plaintiff's contention that these other reports did not take into consideration Plaintiff's problems with stooping, as was later included in Dr. Reeve's report, has little merit. As noted earlier, preclusion from stooping does not preclude Plaintiff from working at sedentary jobs.

21. Plaintiff was also examined by Dr. G.T. Davis in February 1995. Tr. at 136-38. Dr. Davis stated that Plaintiff reported that her husband does most of the household chores and that she does not drive because of the clutch. The report stated that Plaintiff could only take two to three steps on her toes and heels and squat halfway down, with pain on movement. Tr. at 136.

22. Dr. Davis found limited range of motion on trunk rotation and flexion and that motor functions were intact for lower extremities, although Plaintiff reported decreased sensation in the right posterior calf. Tr. at 137. The doctor concluded that Plaintiff would have restrictions in both her activities of daily living and in her work.

23. In assessing Plaintiff's RFC, the ALJ did consider Ms. Lopez' activities of daily living. The ALJ would have been in error to rely on this factor alone in examining the record for a residual functional capacity assessment. However, he relied here on a correct legal standard which is based on several factors, including a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. SSR-95-5p; see also 20 C.F.R. Pt.404,Subpt.P,

App.2 §200(c).[2]

24. I find that the ALJ considered all the relevant evidence from the record, and his decision regarding residual functional capacity was based on substantial evidence.

**Second Alleged Error**

25. Plaintiff contends that the ALJ's finding that the number of jobs available to Ms. Lopez is not sufficient under the current law. The vocational expert (VE) testified that Ms. Lopez could perform the sedentary job of charge account clerk, responding to several hypotheticals posed to her by the ALJ, which I find reflected the impairments and limitations borne out by the evidentiary record. See Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996).

26. The first hypothetical was based on the residual functional capacity findings reflected in Dr. Reeve's report. The hypothetical included an ability to sit, stand and walk for eight hours a day, lift and carry 20 pounds occasionally, 10 frequently, and an inability to stoop, crouch, kneel or crawl. The VE opined that the Plaintiff could perform the jobs of office helper (light work) and charge account clerk (sedentary, unskilled). Tr. at 59, 60. Based on the ALJ's finding that Plaintiff was limited to sedentary work, Plaintiff would therefore be able to perform the latter job, of which 40,000 existed in the national economy and 50 exist in New Mexico.

27. In a second hypothetical posed by Plaintiff's representative, the VE was asked whether an inability to bend at all would erode this occupational base. The VE responded that *total* inability to bend would render the cited occupations unsuitable, but that occasional bending would not affect the occupational base. Tr. at 61-62. This hypothetical does little more than

---

[2] The issue of inconsistent reporting by Plaintiff regarding her ability to perform daily activities will be addressed under the third alleged error raised by Plaintiff.

create confusion built on semantics surrounding the terms "bending" and "stooping."

28. Social security regulations regard "bending" as a general term. It includes movements such as stooping, kneeling, crouching, and crawling as "progressively more strenuous forms of bending parts of the body." SSR 86-15 ("Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved.")

29. Dr. Reeve's recommendation that Plaintiff not stoop at all, did not affect the VE's findings, but a broad restriction as to bending, i.e., would literally erode the occupational base. The medical report, however, did not contain such a sweeping restriction, and thus the second hypothetical restricting all bending did not accurately reflect Plaintiff's impairments. Thus, the ALJ correctly did not regard the VE's testimony regarding total bending restrictions.

30. Plaintiff's argument here is that the VE's testimony does not provide substantial evidence that there are a significant number of jobs that Ms. Lopez can perform. Further, Plaintiff alleges that relying on the number of jobs in the national economy without regard to the number in the local or regional economy is contrary to law.

31. A disability is defined as an inability to do "work which exists in the national economy," which means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A) (1991); <u>Trimiar v. Sullivan</u>, 966 F.2d 1326, 1330 (10th Cir. 1992). This Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a "significant number." Nevertheless, the disjunctive language in the statutory text would appear to allow a reliance on the number of jobs in the national economy when there might be a question about whether the number is "significant"

in the regional economy.

32. Trimiar v. Sullivan, 966 F.2d 1326 (10th Cir.1992), the court pointed to several factors that "go into the proper evaluation of significant numbers." Id. at 1330. These factors include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. Id.

33. In this case, the ALJ considered the severity of claimant's impairments and their effect on her ability to work. Ms. Lopez presents no reason why we should question the VE's reliability. Given that the ALJ opted to believe Plaintiff's statement to Dr. Reeve that she could drive as more credible that her statement to Dr. Davis that she could not drive a clutch, the ALJ did consider the Trimiar factors. The ALJ was not required to consider whether work exists in the immediate area in which Plaintiff lives, whether a specific job vacancy exists for her; or whether she would be hired if she applied for work. See 20 C.F.R. §§ 404.1566; 416.966.

34. Accordingly, I find that the ALJ did not err in finding that the number of jobs available to Ms. Lopez is not sufficient under the current law.

**Third Alleged Error**

35. Plaintiff also contends that the ALJ's credibility determination is not supported by substantial evidence and is contrary to law. The ALJ is required to look at several factors when determining the credibility of pain testimony: levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other

10

witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.'" Thompson, 987 F.2d at 1489 (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991).

36. The ALJ examined all these factors. Tr. at 15-17. He noted that the medical record, including the x-rays and MRI, did not fully corroborate Plaintiff's alleged severe limitations. The fact that the objective findings would support Plaintiff's allegations of pain is not inconsistent with the ALJ's findings that Plaintiff did not suffer from disabling pain. A finding of disability requires more than mere inability to work without pain. Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986). Further, while a claimant is not required to present objective medical evidence to corroborate the *degree* of pain, Huston v. Bowen, 838 F.2d 1125 (10th Cir. 1988), the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain. Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987).

37. As discussed above, the ALJ noted that Plaintiff did not seek treatment from her own doctor after the date of onset until after receiving the notice of hearing. He found Plaintiff's excuse of lack of funds as an insufficient reason for not seeking treatment, particularly when it was not out of reach geographically, and the hospital where Ms. Lopez had gone for her MRI treated low-income patients. Tr. at 17.

38. As part of the credibility analysis, the ALJ was entitled to choose to believe Plaintiff's statements to Dr. Reeve regarding her ability to perform activities of daily living, as opposed to statements made to Dr. Davis a year earlier that her husband did most of the chores. The ALJ acknowledged reliance on the grids was permissible here, where he had determined that Plaintiff's alleged nonexertional limitations were found to be noncredible. See Williams v. Bowen, 844 F.2d

748, 755 (10th Cir. 1988).

39. In sum, I find that: (1) the residual functional capacity finding is supported by substantial evidence and is not contrary to law; (2) that the ALJ's finding that the number of jobs available to Ms. Lopez is sufficient under the current law; and (3) that the ALJ's credibility determination is supported by substantial evidence and is not contrary to law.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 9]** be denied and this cause of action dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE